Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:   (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA MEZA-SOLIVEN, MICHAEL BETZAG and LINDA ESOPA** on behalf of themselves and all others similarly situated,<br><br>        **Plaintiffs,**<br><br>        **v.**<br><br>**THE LIV GROUP, INC. and UNILEVER NORTH AMERICA**<br><br>        **Defendants.** | **CASE NO.:** '24 CV 0019 TWR DDL<br><br><u>**CLASS ACTION**</u> |

Plaintiffs Patricia Meza-Soliven, Michael Betzag, and Linda Esopa ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action against Defendants The Liv Group, Inc. and Unilever North America (collectively "Defendants"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a nationwide, California and New York class (collectively, "Class") of consumers seeking redress for Defendants' deceptive practices associated with the advertising, labeling, and sale of its Liquid I.V. hydration electrolyte drink powder stick mixes ("Mixes" or "Products").[1]

 

---

[1] Class Products include: Hydration Multiplier, Hydration Multiplier + Immune Support, Energy Multiplier, Sleep Multiplier.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

2.      Defendants claim to have developed "smart hydration technology" that "hydrate[s] better than water alone," a system " designed to enhance rapid absorption of water and other key ingredients."[2] By using a "specific ratio of glucose, sodium, and potassium," Liquid I.V. claims to deliver "water and key nutrients directly to [the] body faster and more efficiently than water alone." [3]

3.      Recognizing their audience consists of health-conscious consumers, Defendants dressed the Product  a health halo and touted its clean label features promising that Liquid I.V. is "made with quality ingredients," "free from"  GMO, dairy, gluten, soy, artificial sweeteners, flavors, and colors."  Most prominent among their "free from" claims – the representation that their Products contain "No Preservatives."

4.      Unfortunately, the claim that their Products contain "No Preservatives" is false, as they each contain a significant amount of the preservatives including, most prominently, citric acid.

---

[2] https://www.liquid-iv.com/pages/science, last visited October 1, 2023.

[3] https://www.liquid-iv.com/pages/faq, last visited October 1, 2023.



5.     Despite unequivocally and boldly claiming that their Products contain "No Preservatives," the inclusion of citric acid and other preservatives belie this affirmation, rendering it false, misleading, and in violation of the law.

6.     Defendants know that consumers are willing to pay more for foods that are labeled as preservative free because they perceive it to be a healthier alternative to similar products that contain preservatives Indeed, Defendants advertise the Products with the intention that consumers rely on the representation made on the packaging that the Products have "No Preservatives."

7.     Reasonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of "No Preservatives."

8.     By falsely labeling the Products as having "No Preservatives," Defendants have profited from consumers' preference for products that are perceived to be healthier by being preservative free.

9.     Throughout the applicable class periods, Defendants have falsely represented the true nature of their Products, and as a result of this false and misleading labeling, were able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California, New York, and the United States.

10.     Plaintiffs allege Defendants' conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq.*, N.Y. Gen. Bus U. Law § 349 et seq.,  N.Y. Gen. Bus. Law § 350 et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## **JURISDICTION AND VENUE**

11.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Meza-Soliven is a resident of San Diego, California, Plaintiff Betzag is a resident of Rockville Center, New York, and Plaintiff

Esopa is a resident of Valley Stream, New York. Defendants The Liv Group, Inc. and Unilever are respectively California and Delaware corporations headquartered in New Jersey. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendants from their transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendants have received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

13.    Plaintiff Meza-Soliven is a resident of San Diego, California.

14.    Ms. Meza-Soliven purchased Defendants' Products throughout the applicable class periods. The purchases were made at local retail locations including but not limited to Walmart.

15.    Ms. Meza-Soliven believed the representations on the Products' labels were accurate, particularly in that they did not contain preservatives.

16.    Ms. Meza-Soliven believed that Defendants lawfully marketed and sold the Products.

17.    Ms. Meza-Soliven relied on Defendants' labeling and was misled thereby.

18.    Ms. Meza-Soliven would not have purchased the Products, or would have purchased the Products on different terms had she known the truth about their contents.

19.     Ms. Meza-Soliven was injured in fact and lost money as a result of Defendants' improper conduct.

20.     If Ms. Meza-Soliven had occasion to believe that Defendants' marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendants' Products in the future.

21.     Plaintiff Michael Betzag is a resident of Rockville Center, New York.

22.     Mr. Betzag purchased Defendants' Hydration Multiplier Product throughout the applicable class periods. The purchases were made at local retail locations including but not limited to CVS, Vitamin Shoppe and GNC.

23.     Mr. Betzag believed the representations on the Products' labels were accurate, particularly in that they did not contain preservatives.

24.     Mr. Betzag believed that Defendants lawfully marketed and sold the Products.

25.     Mr. Betzag relied on Defendants' labeling and was misled thereby.

26.     Mr. Betzag would not have purchased the Products, or would have purchased the Products on different terms had he known the truth about their contents.

27.     Mr. Betzag was injured in fact and lost money as a result of Defendants' improper conduct.

28.     If Mr. Betzag had occasion to believe that Defendants' marketing and labeling is truthful, non-misleading, and lawful, she would purchase Defendants' Products in the future.

29.     Plaintiff Linda Esopa is a resident of Valley Stream, New York.

30.     Ms. Esopa purchased Defendants' Hydration Multiplier Product throughout the applicable class periods. The purchases were made at local grocery stores.

31.     Ms. Esopa believed the representations on the Products' labels were accurate, particularly in that they did not contain preservatives.

32.     Ms. Esopa believed that Defendants lawfully marketed and sold the Products.

33.     Ms. Esopa relied on Defendants' labeling and was misled thereby.

34.     Ms. Esopa would not have purchased the Products, or would have purchased the Products on different terms had she known the truth about their contents.

35.     Ms. Esopa was injured in fact and lost money as a result of Defendants' improper conduct.

36.     If Ms. Esopa had occasion to believe that Defendants' marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendants' Products in the future.

37.     Defendant The Liv Group, Inc., manufactures, markets, and sells a line of hydrating electrolyte drink mixes. They are sold across a variety of retail segments including supermarkets, convenience stores, and mass merchants. The Liv Group, Inc. is a California corporation which, upon information and belief, was purchased by Defendant Unilever in or around 2020.[4]

38.     Defendant Unilever North America is one of the world's leading suppliers of beauty & personal care, home care, and foods & refreshment products with billions in yearly sales. It operates in over 190 countries, reaching 2.5 billion consumers a day. Among its diverse offerings is Liquid I.V. Unilever is a Delaware corporation headquartered in Englewood Cliffs, New Jersey.

---

[4] https://www.unilever.com/news/press-and-media/press-releases/2020/unilever-to-acquire-liquid-iv/

# **GENERAL ALLEGATIONS**

### **A.    Citric Acid is a Preservative**

39.    The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).  "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

40.    Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

41.    Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[5]

---

[5] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: **ascorbic acid**, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited October 2, 2023)

The sentiment is echoed in the Substances Added to Food database maintained by the FDA, in which the principal technical effects of citric acid are identified as preservative functions. [6] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such.  "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[7]

42.    Citric acid's primary use is as a preservative, despite potentially having additional functions.[8]  It functions as a preservative in the Products, regardless of Defendants' subjective purpose(s) for adding it to the Products, and regardless of any other functions citric acid may perform. This is even more the case here where Defendant has not declared a contrary purpose for adding citric acid and the Products separately contain flavorings (i.e., "natural flavor") as an ingredient.

## B.    Other Preservatives

43.    Notwithstanding the fact that the inclusion of citric acid alone renders the "no preservatives" claim false, the claim is further belied by at least three other ingredients that also have preservative functions.

---

[6] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited October 2, 2023)

[7] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited October 6, 2023).

[8] *See* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited October 6, 2023).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

| | |
|---|---|
| **Potassium Citrate** | Adding potassium hydroxide to citric acid results in the formation of potassium citrate crystals. These crystals are separated from the solution for use as a food additive. The primary reason for adding potassium citrate as a food preservative is to have a buffer to control PH. It has a natural pH between 7.5 and 9 depending on the concentration. Keeping the pH in this alkaline state can inhibit the function of certain enzymes and preserve food for longer. [9] |
| **Sodium citrate (Trisodium citrate)** | Trisodium citrate is often referred to as sodium citrate, though sodium citrate can refer to any of the three sodium salts of citric acid. Sodium citrate is primarily used as a food additive, usually for flavor or as a preservative.[10]<br><br>Several substances are used in the production, processing, treatment, packaging, transportation, and storage of food. In the meat industry, additives like citric acid and sodium citrate are widely applied for pH control, metal chelating, and preservation.[11] |
| **Ascorbic Acid** | "Ascorbic acid is often included in food products as a preservative." Indeed, ascorbic acid is defined as a chemical preservative at 21 C.F.R. §182.3013.[12] |

---

[9] Vynova, *Potassium Citrate, Keeping Your Food Fresh for Longer*, November 5, 2019. Available at https://www.vynova-group.com/blog/potassium-citrate-keeping-food-fresh

[10] *Sodium Citrate*, The Chemical Company. Available at https://thechemco.com/chemical/sodium-citrate/#:~:text=Sodium%20citrate%20is%20primarily%20used,employed%20as%20a%20flavoring%20agent.

[11] Sammel L. M., Claus J. R., Greaser M. L., Richards M. P. (2006*). Investigation of mechanisms by which sodium citrate reduces the pink color defect in cooked ground turkey*. Meat Sci. 72 585–595. 10.1016/j.meatsci.2005.09.008. Available at https://www.sciencedirect.com/science/article/abs/pii/S030917400500344X (last visited January 3, 2024).

[12] United States Department of Agriculture Agricultural Marketing Service, National Organic Program, *Technical Report on Ascorbic Acid*. https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last visited January 3, 2024).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

### C.    Consumer Demand For Preservative Free Products

44.    The clean label movement has been called "the largest shift in American food habits since World War II."[13] The term encompasses many things, but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[14]

45.    By representing the Products have "No Preservatives," Defendants seek to capitalize on consumer preference for clean label products. Indeed, "[foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[15] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, preservative free ranks "[a]mong the top claims… deem[ed] most important." *Id.*

46.    In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained "no preservatives.[16]

---

[13] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited October 6, 2023).

[14] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited October 6, 2023).

[15] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

[16] https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited January 3, 2024).

---

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

47.     By failing to properly label its Products, Defendants have misled and deceived consumers in violation of the laws pled herein.

48.     As a result of Defendants' unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## ECONOMIC INJURY

49.     Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

50.     Plaintiffs saw and relied on Defendants' misleading labeling of its Products.

51.     Plaintiffs believed that the purchased Products contained no preservatives.

52.     Plaintiffs believed that the Products were lawfully marketed and sold.

53.     In reliance on the claims made by Defendants regarding the qualities of their Products, Plaintiffs paid a price premium.

54.     As a result of their reliance on Defendants' misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed they did not contain.

55.     Plaintiffs received Products that were unlawfully marketed and sold.

56.     Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

57.     Defendant knows that the claim the Products are free of preservatives is material to a consumer's purchasing decision.

58.     Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

59.     By engaging in the false and deceptive conduct alleged herein, Defendants reaped, and continue to reap financial benefits in the form of sales and profits from their Products.

60.     Plaintiffs, however, would be willing to purchase Products again in the future should they be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

> a.  **National**: All persons in the United States who purchased Class Products in the United States during the Class Period.
>
> b.  **California:** All persons in California who purchased the Class Products in California during the Class Period.
>
> c.  **New York:** All persons in New York who purchased the Class Products in New York during the Class Period.
>
> d.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

62.     Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

63.    Excluded from the Class are: (i) Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

64.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

65.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

66.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a.  Whether Defendants marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

    b.  Whether Defendants omitted or misrepresented material facts in connection with the sales of their Products;

    c.  Whether Defendants participated in and pursued the common course of conduct complained of herein;

    d.  Whether Defendants have been unjustly enriched as a result of its unlawful business practices;

    e.  Whether Defendants' actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

    f.  Whether Defendants' actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

    g.  Whether Defendants' actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

    h.  Whether Defendants' actions violate N.Y. Gen. Bus. Law § 349 et seq;

i.   Whether Defendants' actions violate N.Y. Gen. Bus. Law §
     350 et seq;

j.   Whether Defendants should be enjoined from continuing the
     above-described practices;

k.   Whether Plaintiffs and members of the Class are entitled to
     declaratory relief; and

l.   Whether Defendants should be required to make restitution,
     disgorge profits, reimburse losses, and pay damages as a
     result of the above-described practices.

67.   Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased Defendants' Products. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

68.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

69.   A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far

fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

70.    In the alternative, the Class may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

71.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty)

72.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

73.    Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendants were afforded reasonable notice of this claim in advance of the filing of this complaint.

74.    Defendant made express warranties to Plaintiffs and members of the Class that the Products contained "no preservatives."

75.    The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendants specifically relates to the goods being purchased and became the basis of the bargain.

76.    Plaintiffs and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

77.    Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

78.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

79.    Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
**("Unlawful" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)
(On Behalf of the California Subclass)**

80.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

81.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

82.    A business act or practice is "unlawful" if it violates any established state or federal law.

83.    Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 U.S.C. §§331 and 333, which prohibits the introduction of misbranded foods into interstate commerce.

84. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq.*, broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 as the food labeling regulations of California. Cal. Health & Safety Code §§110100(a), 110665, 110670.

85. As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

86. Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

87. Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal

law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

88.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

89.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
#### ("Unfair" Business Practices in Violation of
#### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)
#### (On Behalf of the California Subclass)

90.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

91.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

92.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

93.    Defendants have violated, and continue to violate, the "unfair" prong of the UCL through their misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendants for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

94.    Through its unfair acts and practices, Defendants obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and request that this Court cause Defendants to restore this money to Plaintiffs and the members of the Class, to disgorge the profits Defendants made on its Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION
**("Fraudulent" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)
(On Behalf of the California Subclass**

95.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

96.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

97.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

98.    Defendants' acts and practices of mislabeling its Products in a manner to suggest they contained no preservatives.

99.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Defendants have been unjustly enriched by the profits they have obtained from Plaintiffs and the Class from the purchases of their Products.

100.    Through their fraudulent acts and practices, Defendants have improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and the Class, to disgorge the profits Defendants have made, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION
### (False Advertising in Violation of
### California Business & Professions Code §§ l7500, *et seq*.)
### (On Behalf of the California Subclass)

101.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

102.    Defendants use advertising and packaging to sell their Products. Defendants disseminate advertising regarding their Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

103.    In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

104.   The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

105.   Through their deceptive acts and practices, Defendants have improperly and illegally obtained money from Plaintiffs and the members of the Class. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and the members of the Class, and to enjoin Defendants from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendants' false and/or misleading advertising.

106.   Pursuant to California Business & Professions Code §17535, Plaintiffs seek an Order of this Court ordering Defendants to fully disclose the true nature of their misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendants to disgorge their ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendants, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,
California Civil Code §§ 1750, *et seq*.)
(On Behalf of the California Subclass)**

107.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

108.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

109.   Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

110.   The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e), and the Products constitute "goods" within the meaning of Civil Code §1761(a).

111.   Defendants have violated, and continues to violate, the CLRA in at least the following respects:

   a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

   b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

   c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

112.   Defendants knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

113.   The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendants' labels, which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendants' misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

114.   Defendants carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

115.   Plaintiffs and the members of the Class request that this Court enjoin Defendants from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

Defendants are permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendants' Products will be damaged by their acts and practices in the same way as Plaintiffs and California Subclass Members.

116.    Plaintiffs served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendants of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. Thirty days have passed, and Defendants have not addressed Plaintiffs' demands. Accordingly, Plaintiffs seek the full measure of damages as provided under Civil Code §1780.

## SEVENTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**
**(On behalf of the New York Subclass)**

117.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

118.    Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 349(a).

119.    Defendants' labeling and marketing of the Products, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiffs and the New York Subclass as to the characteristics and value of the Products.

120.    Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h).

121.  In accordance with subsection (h) of Section 349, Plaintiffs seek an order enjoining Defendants from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful, deceptive acts and practices, Defendants will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Defendants' deceptive acts and practices, Plaintiffs and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## EIGHTH CAUSE OF ACTION

### (Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.)*
### (On Behalf of the New York Subclass)

122.  Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 350.

123.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 350.

124.    New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

125.    Defendants' labeling, marketing, and advertising of its Products, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Products as consisting of characteristics and lawfulness that they do not possess.

126.    Plaintiffs seek an order enjoining Defendants from continuing this false advertising. Absent enjoining this false advertising, Defendants will continue to mislead Plaintiffs and the other members of the New York Subclass as to the characteristics of their Products, and in doing so, irreparably harm each of the New York Subclass members.

127.    As a direct and proximate result of Defendants' violation of New York General Business Law §350, Plaintiffs and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## NINTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)
### By Plaintiffs on Behalf of the Nationwide Class

128.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

129.   Defendants' conduct in enticing Plaintiffs and the Class to purchase Products with false and misleading packaging is unlawful because the statements contained on the Defendants' Product labels are untrue.

130.   Defendants took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and the Class.

131.   It is against equity and good conscience to permit Defendants to retain the ill-gotten benefits received from Plaintiffs and Class members.

132.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.   An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.   Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendants' Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Other statutory penalties for Causes of Action for which they are available.

E.     Punitive Damages for Causes of Action for which they are available.

F.     A declaration and Order enjoining Defendants from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.     An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein.

I.     Such other and further relief as may be deemed necessary or appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: January 3, 2024                Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile:  (213) 401-0311
Email:  mdb@kuzykclassactions.com

Peter N. Wasylyk
**LAW OFFICES OF PETER N.
WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*