UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA MEZA-SOLIVEN, MICHAEL BETZAG, and LINDA ESOPA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>THE LIV GROUP, INC. and UNILEVER NORTH AMERICA,<br><br>                    Defendants. | Case No.: 24-CV-19 TWR (DDL)<br><br>**ORDER (1) DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 7) |

Presently before the Court is Defendant The LIV Group, Inc.'s ("LIV") Motion to Dismiss Complaint and Dismiss or Strike Nationwide Class Allegations ("Mot.," ECF No. 7),[1] as well as Plaintiffs Patricia Meza-Soliven, Michael Betzag, and Linda Eposa's Response in Opposition to the Motion ("Opp'n," ECF No. 9) and Defendant's Reply in Support of its Motion ("Reply," ECF No. 10). Also before the Court are Defendant's Request for Judicial Notice ("RJN," ECF No. 7-1), Plaintiffs' Objections to Defendant's Request for Judicial Notice ("Objs.," ECF No. 9-1), and Defendant's Reply to Plaintiffs'

---

[1] Although Plaintiffs initially named Unilever North America as a defendant, Plaintiffs and LIV subsequently stipulated to Unilever's dismissal. (*See* ECF Nos. 12, 13.)

Objections ("Resp.," ECF No. 11).  The Court held a hearing on July 17, 2024.  (*See* ECF No. 14.)    Having carefully considered Plaintiffs' putative class action Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the relevant law, the Court **DENIES** Defendant's Request for Judicial Notice and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, as follows.

## BACKGROUND

### I.     Factual Background[2]

#### A.     *Defendant's Product and Its Packaging*

LIV markets, distributes, and sells a line of hydrating electrolyte drink powder stick mixes called Liquid I.V. (the "Products") throughout California, New York, and the United States through a variety of retail segments including supermarkets, convenience stores, and mass merchants.  (*See* Compl. ¶¶ 1–9, 37.)  By using a "specific ratio of glucose, sodium, and potassium," LIV claims to have developed a system "designed to enhance rapid absorption of water and other key ingredients" that "hydrate[s] better than water alone." (*Id.* ¶ 2.)   The Class Products at issue in Plaintiffs' Complaint are LIV's Hydration Multiplier, Hydration Multiplier + Immune Support, Energy Multiplier, and Sleep Multiplier.  (*Id.* ¶ 1 n.1.)

The back panel of the Liquid I.V. package lists the Products' ingredients and touts, among other things, that the Products contain "[n]o [p]reservatives."  (*Id.* ¶ 3.)  For example, Plaintiffs provide the following example in their Complaint:

/ / /

/ / /

/ / /

/ / /

---

[2]     For purposes of Defendant's Motion, the facts alleged in Plaintiffs' Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").



(*See id.* at 3.)  Among the many ingredients in the Products, however, is citric acid, (*see, e.g.*, *id.* ¶ 5), as well as potassium citrate, sodium (trisodium) citrate, and ascorbic acid. (*Id.* ¶ 43.)  "Citric acid's primary use is as a preservative, despite potentially having additional functions[,]" and it "functions as a preservative in the Products."  (*Id.* ¶ 42.)  The additional ingredients identified by Plaintiffs also have "preservative functions."  (*Id.* ¶ 43.)

Chemical preservation is the practice of adding ingredients to foods to extend their shelf life and to prevent potential damage from oxidation, microbial growth, or other undesirable changes. (*Id.* ¶ 40.) The Federal Food, Drug, and Cosmetic Act ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof." (*Id.* ¶ 39 (quoting 21 C.F.R. § 101.22(a)(5)).) The FDCA requires "[a] food to which a chemical preservative is added [to] . . . bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function." (*Id.* (third alteration in original) (quoting 21 C.F.R. § 101.22(j)).) In several instances, the Food and Drug Administration ("FDA") has identified citric acid as a preservative. (*See id.* ¶ 41.)

LIV is aware that consumers may be willing to pay more for food products that are labeled preservative-free, as they may perceive preservative-free products to be healthier alternatives to similar food products containing preservatives. (*Id.* ¶ 6.) By falsely labeling the Products as containing "No Preservatives," Defendant sought to capitalize on the growing consumer preference for clean label products. (*See id.* ¶¶ 44–47.)

### B.    *Plaintiffs' Purchase of Defendant's Products*

At some unspecified time throughout the applicable class periods, Ms. Meza-Soliven, a resident of San Diego, California, purchased LIV's Products "at local retail locations including[,] but not limited to[,] Walmart." (Compl. ¶¶ 13–14.) Mr. Betzag, a resident of Rockefeller Center, New York, purchased Defendant's Hydration Multiplier Product throughout the applicable class periods "at local retail locations including[,] but not limited to[,] CVS, Vitamin Shoppe[,] and GNC." (*Id.* ¶¶ 21–22.) Ms. Esposa, a resident of Valley Stream, New York, purchased Defendant's Hydration Multiplier Product throughout the applicable class periods "at local grocery stores." (*Id.* ¶¶ 29–30.)

All Plaintiffs allege that, at the time of their purchases, they "believed the representations on the Products' labels were accurate, particularly in that they did not contain preservatives," (*id.* ¶¶ 15, 23, 31), and "believed that Defendant[] lawfully marketed and sold the Products," (*id.* ¶¶ 16, 24, 31). Plaintiffs "relied on Defendant['s]

labeling and w[ere] misled thereby," (*id.* ¶¶ 17, 25, 33), and "would not have purchased the Products, or would have purchased the Products on different terms[,] had [they] known the truth about their contents," (*id.* ¶¶ 18, 26, 36). Plaintiffs were therefore "injured in fact and lost money as a result of" LIV's advertising of the Products as containing "No Preservatives." (*Id.* ¶¶ 19, 27, 35.)

## II. Procedural Background

On January 3, 2024, Plaintiffs filed this putative class action against LIV and Unilever on behalf of "a nationwide, California[,] and New York class . . . of consumers seeking redress for Defendants' deceptive practices associated with the advertising, labeling, and sale of its Liquid I.V." (*See generally* ECF No. 1; *see also id.* ¶ 1.) Seeking restitution, damages, and declaratory injunctive relief, among other things, (*see generally id.* at Prayer for Relief), Plaintiffs asserted nine causes of action for (1) breach of express warranty, Cal. Com. Code § 2313, N.Y. CLS UCC § 2-313; (2) "unlawful" business practices in violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200–17210; (3) "unfair" business practices in violation of the UCL; (4) "fraudulent" business practices in violation of the UCL; (5) false advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–17606; (6) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784; (7) violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Las §§ 349–349-F ("DPA"); (8) violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Las §§ 350–350-F-1 ("Section 350"); and (9) restitution based on quasi-contract/unjust enrichment. (*See generally* Compl.) The instant Motion followed on March 22, 2024. (*See generally* ECF No. 7.)

## REQUEST FOR JUDICIAL NOTICE

Before turning to the merits of Defendant's Motion, the Court addresses Defendant's Request for Judicial Notice, through which Defendant seeks judicial notice of and/or incorporation by reference of the following exhibits:

**Exhibit A**: A complete true and correct image of the label of the product Liquid I.V. Hydration Multiplier + Immune Support Drink Mix (Wildberry Blend) ("Immune Support Drink Mix") shown in paragraph 1 of the Complaint (Dkt. 1);

**Exhibit B**: A complete true and correct image of the label of the product Liquid I.V. Hydration Multiplier Electrolyte Drink Mix (Lemon Lime) ("Electrolyte Drink Mix") shown in paragraph 1 of the Complaint (Dkt. 1);

**Exhibit C**: U.S. FOOD & DRUG ADMIN., *Hazard Analysis and Risk-Based Preventive Controls for Human Food: Guidance for Industry, Draft Guidance* (January 2024), available at https://www.fda.gov/media/100002/download;

**Exhibit D**: U.S. DEP'T OF AGRIC., *Water Activity in Food* (Aug. 1995), available at https://pmp.errc.ars.usda.gov/WaterActivity.aspx;

**Exhibit E**: VA STATE UNIV., *Understanding the Water Activity of Your Food* (2012), OHIO STATE UNIV., available at https://farmoffice.osu.edu/sites/ aglaw/files/sitelibrary/StartingAFoodBusiness/WaterActivityofFood.pdf.

(*See* RJN at 1 (emphases in original).) Specifically, Defendant asks the Court to take judicial notice of or incorporate by reference Exhibits A and B and to take judicial notice of Exhibits C through E. (*See id.* at 1.)

"Judicial notice under [Federal] Rule [of Evidence] 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (alteration in original)). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (quoting *Lee*, 250 F.3d at 689).

Defendant requests the Court take judicial notice of Exhibits A through E, the first two of which are the current labels of the two products depicted in Plaintiffs' Complaint

on pages 1 and 3 and the last three of which are publicly available government publications. (*See* RJN at 1–4.)  Although Plaintiffs initially opposed Defendant's request as to Exhibits A and B, (*see* Obj. at 1), Plaintiffs withdrew their objection, which was based on a misunderstanding, at oral argument.  Although Exhibits A and B may be proper subjects of judicial notice, however, they are not necessary to the Court's analysis of Defendant's Motion.  The Court therefore declines to take judicial notice of Defendant's Exhibits A and B.[3]  *See Stengel v. Medtronic Inc.*, 676 F.3d 1159, 1167 (9th Cir. 2012) (concluding that, even if judicial notice were proper, it was not necessary where facts to be judicially noticed did not affect the court's analysis), *rev'd on other grounds on reh'g en banc*, 704 F.3d 1224 (9th Cir. 2013).

Regarding Exhibits C through E, "[j]ust because the document[s them]sel[ves are] susceptible to judicial notice does not mean that every assertion of fact within th[ose] document[s] is judicially noticeable for its truth."  *See Khoja*, 899 F.3d at 999.  Here, "Defendant offers Exhibits C through E for the fact that low moisture foods—i.e., foods with a water activity level below 0.60 like Liquid I.V.—have extended shelf lives even without refrigeration and 'do not require added preservatives to achieve microbiological stability.'" (Resp. at 3.)  Even if this fact were "not subject to reasonable dispute," *see* Fed. R. Evid. 201, the fact that low-moisture foods do not *require* added preservatives, however, does not mean that low-moisture foods may not still contain preservatives, as defense counsel conceded at oral argument.  The Court therefore declines to take judicial notice of Defendant's Exhibits C through E and **DENIES** Defendant's Request for Judicial Notice in its entirety.

/ / /

/ / /

---

[3]    Alternatively, Defendant requests that the Court incorporate by reference Exhibits A and B.  (*See* Def.'s RJN at 3.)  For the same reason the Court declines to take judicial notice of Exhibits A and B, the Court also declines to incorporate them by reference.

**MOTION TO DISMISS**

Through the instant Motion, Defendant seeks to dismiss Plaintiffs' Complaint on several grounds.  First, Defendant contends that Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) both because Plaintiffs do not "plausibly allege that a significant portion of consumers acting reasonably under the circumstances are misled by the 'No Preservatives' claim on the Liquid I.V. products," (*see* Mot. at 1, 9–13; *see also id.* at 20–21), and because Plaintiffs' allegations fail to satisfy the heightened pleading standard under Rule 9(b).  (*See* Mot. at 1–2, 14–17.)  Second, Defendant argues for dismissal under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs fail to allege they have Article III standing.  (*See* Mot. at 2, 17–20.)  Third and finally, Defendant urges the Court to strike or dismiss Plaintiffs' nationwide class claims under Federal Rule of Civil Procedure 12(b)(6) or 12(f).  (*See* Mot. at 2, 21–23.)  "As Article III standing is a jurisdictional issue, the court must first address that argument before reaching the merits of any 12(b)(6) challenges to the sufficiency of pleading." *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 959 (N.D. Cal. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

## I.    Rule 12(b)(1)

### A.    *Legal Standard*

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Rule 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

1039 (9th Cir. 2004)).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings."  *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."  *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).  "With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."  *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733).  "The caveat is that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim."  *Id.* at 1122 n.3 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine*, 704 F.2d at 1077).

"Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)).

### B.    Analysis

Defendant argues that Plaintiffs' Complaint should be dismissed in its entirety because Plaintiffs fail to allege sufficient facts to establish that they have Article III standing.  (*See* Mot. at 17–20.)  To meet their burden, Plaintiffs must "clearly . . . allege

facts demonstrating" that they each "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, *as revised* (May 24, 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–499 (1975) (first citing *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 559–560 (1992); then citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Further, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief sought." *Davidson v. Kimberly-Clark*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth*, 528 U.S. at 185). Here, Defendant contends that Plaintiffs fail to allege facts demonstrating that they suffered either an economic injury, (*see* Mot. at 17–19), or that they have standing to seek injunctive relief. (*See id.* at 19–20.)

### 1. Economic Injury

All three named Plaintiffs allege that they "would not have purchased the Products, or would have purchased the Products on different terms[,] had [they] known the truth about their contents," (*see* Compl. ¶¶ 18, 26, 34), and that they "w[ere] injured in fact and lost money as a result of Defendant['s] improper conduct." (*See id.* ¶¶ 19, 27, 35.) Specifically, Plaintiffs contend that they "suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception." (*See id.* ¶ 58.) Defendant contends that "[n]either [theory] is sufficient to confer standing." (*See* Mot. at 17.)

Based on the cases cited, the Court is concerned that the "parties [have] conflate[d] the legal analysis and standard of Article III standing and statutory standing under the UCL, CLRA[,] and" GBL section 349 and 350. *See Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1005 (S.D. Cal. 2021). In 2004, California voters approved Proposition 64, which limited standing under the UCL to those who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition." *See Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006). "[B]ecause economic injury is but one among many types of injury in fact, the Proposition 64 requirement that injury

be economic renders standing under section 17204 [of the UCL] substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 324, 246 P.3d 877, 886 (2011) (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009)).  The same is true of the New York consumer protection laws Plaintiffs invoke.  *See, e.g.*, *Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 580 (S.D.N.Y. 2023) ("Injury in fact is a low threshold, which we have held need not be capable of sustaining a valid cause of action." (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008))).  Defendant's most compelling case, *Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019), deals not with the sufficiency of allegations to establish Article III standing pursuant to Rule 12(b)(1) but rather with the sufficiency of allegations to establish statutory standing under G.B.L. sections 349 and 350 under Rule 12(b)(6).

The Ninth Circuit "ha[s] explained that when, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (second alteration in original) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)).  As required by the Ninth Circuit in *Hinojos*, the Court therefore concludes that Plaintiffs adequately allege an injury in fact to establish Article III standing.

### 2.    Injunctive Relief

Plaintiffs also seek "[a] declaration and Order enjoining Defendant[] from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in th[e] Complaint."  (*See* Compl. at Prayer for Relief ¶ F.)  As is relevant here, the Ninth Circuit has "h[e]ld that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of

future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70 (first citing *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); then citing *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)). "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970 (citing *Richardson v. L'Oreal USA Inc.*, 991 F. Supp. 2d 181, 194–95 (D.D.C. 2013)).

Here, "Plaintiffs allege that they 'would be willing to purchase Products again in the future should they be able to rely on Defendants' marketing as truthful and nondeceptive.'" (Mot. at 19 (quoting Compl. ¶ 60).) Relying on an unpublished Ninth Circuit memorandum disposition, Defendant contends that Plaintiffs' "desire for [a defendant] to truthfully label its products, without more, is insufficient to demonstrate that they have suffered any particularized adverse effects." (*Id.* (alteration in original) (quoting *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, No. 20-15742, 2021 WL 3878654, *2 (9th Cir. Aug. 31, 2021) (mem.)). In *Coca-Cola*, which was decided on an appeal from the district court's grant of class certification, the Ninth Circuit concluded that the plaintiffs—who had claimed that, "if Coke were properly labeled, they would consider purchasing it"—failed to establish Article III standing for injunctive relief for two reasons. *See* 2021 WL 3878654 at *2. First, "[u]nder governing law, such an abstract interest in compliance with labeling requirements is insufficient, standing alone, to establish Article III standing." *Id.* (citing *Spokeo*, 578 U.S. at 342). "Moreover, the imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke." *Id.* (emphasis in original) (citing *Davidson*, 889 F.3d at 970).

/ / /

The Court finds *Coca-Cola* is distinguishable.  Unlike the plaintiffs in *Cola-Cola*, each of Plaintiffs here alleges that they "would purchase Defendant['s] Products in the future." (*See* Compl. ¶¶ 20, 28, 36); *see also Perez v. Bath & Body Works, LLC*, No. 21-CV-05606-BLF, 2023 WL 3467207, at *5 (N.D. Cal. May 15, 2023) ("[T]he plaintiffs [in *Coca-Cola*] only stated that they would *consider* buying the products in the future, while Plaintiff here alleges that she would like to buy the products in the future." (emphasis in original)).  Further, unlike the plaintiffs in *Coca-Cola*, Plaintiffs here do not appear to "alleg[e] a bare procedural violation."  *Cf. Coca-Cola*, 2021 WL 3878654 at *2 (quoting *Spokeo*, 578 U.S. at 342).  The relevant plaintiffs in *Coca-Cola* "explained that they were not concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its product's labels[,]" meaning "they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors."  *See id.*

Here, by contrast, Plaintiffs' Complaint is based on Defendant's alleged "know[ledge] that consumers are willing to pay more for foods that are labeled as preservative free because they perceive it to be a healthier alternative to similar products that contain preservatives," (*see* Compl. ¶ 6), meaning Defendant "ha[s] profited from consumer's preference for products that are perceived to be healthier by being preservative free." (*See id.* ¶ 8.)  From this, the Court can fairly infer that Plaintiffs would like to buy Defendant's Products in the future, if they can trust Defendant's advertising that the Products contain "No Preservatives."[4]  Plaintiffs also allege that "[r]easonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of 'No Preservatives.'" (*See id.* ¶ 7.)  "Given the alleged limitations of [their] knowledge, even if

---

[4]    Of course, this all may be much ado about nothing given Defendant's representation at oral argument that the Products are no longer being packaged with the representation "No Preservatives," but—for purposes of this Motion—the Court must accept as true the facts as alleged in Plaintiff's Complaint.

24-CV-19 TWR (DDL)

Plaintiff[s] were now aware of one preservative ingredient, it is plausible that [they] will be unable to verify and rely on the 'No Preservatives' labeling in the future." *See Olmos v. T. Marzetti Co.*, No. LACV2103159JAKMRWX, 2022 WL 18358950, at *5 (C.D. Cal. Oct. 11, 2022) (collecting cases). In other words, as in *Davidson*, Plaintiffs plausibly allege that they are "unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to," *see* 889 F.3d at 970, because they are "unable to assess whether the 'No Preservatives' label is correct at the time of a future purchase because [they] allegedly do[] not have the specialized knowledge necessary to identify ingredients that are preservatives." *See Olmos*, 2022 WL 18358950, at *5. The Court therefore concludes that Plaintiffs adequately allege that they have standing for injunctive relief.

### C.    Conclusion

In light of the foregoing, the Court **DENIES** Defendant's Motion to the extent it seeks dismissal of Plaintiffs' claims under Rule 12(b)(1) for lack of Article III standing.

## II.    Rule 12(b)(6)

### A.    Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in

denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

### B.    Analysis

Defendants seek dismissal of Plaintiffs' claims under both Rule 12(b)(6), (*see* Mot. at 9–13, 20–21), and Rule 9(b), (*see* Mot. at 14–17).  Because the majority of Plaintiffs' claims are subject to dismissal under Rule 9(b)'s heightened pleading standard, the Court begins its analysis there.

#### 1.    Rule 9(b)

Defendant contends that all of Plaintiffs' claims fail to satisfy Rule 9(b)'s heightened pleading standard.  (*See* Mot. at 14–17.)  Under Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b).  "In other words, 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).  Essentially, "[t]he allegations of fraud 'must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

As an initial matter, the Court must determine whether all of Plaintiffs' claims are subject to Rule 9(b).  Plaintiffs do not contest—nor could they—that their California consumer protection claims sound in fraud and therefore must meet Rule 9(b)'s heightened pleading standard.[5]  (*See* Opp'n at 2–9); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120,

---

[5]    Plaintiffs did contest for the first time at oral argument that their claims under the unlawful prong of California's UCL are subject to Rule 9(b)'s heightened pleading standard on the grounds that the alleged predicate violation is of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §§ 109875–111929.4, which does not sound in fraud.  Although the Court need not address arguments that were not timely raised, *Makaeff v. Trump Univ., LLC*, 26 F. Supp. 3d 1002, 1007 n.2 (S.D. Cal. 2014) ("[T]he Court need not consider issues raised for the first time during oral argument."

1125 (9th Cir. 2009). Plaintiffs do, however, contest that Rule 9(b) applies to their New York consumer protection claims on the grounds that the Second Circuit has concluded that GBL § 349 is not subject to Rule 9(b)'s heightened pleading standard. (*See* Opp'n at 4 n.2 (citing *Perlman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).) But Plaintiffs chose to file their lawsuit in this District, which is bound by the Ninth Circuit's ruling in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), that Rule 9(b)'s heightened pleading standard "applies to any claim that is 'grounded in fraud' or 'sound[s] in fraud,'" *i.e.*, "where plaintiffs allege a 'unified course of fraudulent conduct and rely entirely on that course of conduct' as the basis of the claim." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (alteration in original) (quoting *Kearns*, 567 F.3d at 1125); *accord In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020) (applying Rule 9(b)'s heightened pleading standard to claims brought under GBL §§ 349 and 350). Further, although the Court agrees with Defendant that Rule 9(b) applies to Plaintiffs' cause of action for unjust enrichment, *see Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *10 n.4 (C.D. Cal. Nov. 23, 2020), the Court must conclude that Plaintiffs' claim for breach of express warranty is not subject to Rule 9(b), *see, e.g., Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018) ("[R]ule [9(b)] does not apply to Plaintiffs' express warranty claim (Claim 1), because fraud is not an essential element of that claim." (citing *Kearns*, 567 F.3d at 1124; *McLellan v. Fitbit, Inc.*, 3:16-CV-00036-JD, 2018 WL 2688781, at *2 (N.D. Cal. June 5, 2018)). The Court therefore concludes that all of Plaintiffs' claims except for their first cause of action for breach of express warranty must be pleaded with particularity under Rule 9(b).

---

(first citing *Visto Corp. v. Sproqit Techs., Inc.*, 413 F. Supp. 2d 1073, 1088 n.8 (N.D. Cal. 2006); then citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012))), "[u]sually, violations of the Sherman Law and FDA labeling regulations constitute misleading actions that are grounded in fraud." *See Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 893 (N.D. Cal.) (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017)), *motion to certify appeal denied*, 2022 WL 833328 (N.D. Cal. Mar. 21, 2022).

Defendants urge that Plaintiffs fail to meet this standard because they fail to "identify[] the actual circumstances of the[ir] alleged purchases," providing only "generalized assertions about unspecified purchases at unspecified locations at unspecified times." (*See* Mot. at 15.) "Plaintiffs also fail to allege with specificity that they saw and were misled by the alleged 'No Preservatives' claim on any Liquid I.V. product," (*see id.*), or "'*what* is false or misleading' about several of the products alleged in the Complaint." (*See id.* at 16 (emphasis in original) (citing *Vess*, 317 F.3d at 1106).) Plaintiffs, on the other hand, contend that they "have sufficiently pled the 'who, what, when, where, and how' of the alleged misconduct." (*See* Opp'n at 8.) As but one example, Plaintiffs assert that "[t]he 'when' is the alleged class period: February 16, 2017 through the present."[6] (*See id.*)

The Court concludes that Defendant is correct. In *In re NJOY, Inc. Consumer Class Action Litigation*, for example, the district court concluded that the plaintiffs had failed to plead the "when" of the purported misrepresentations with particularity when they alleged that the misrepresentations occurred "during the relevant period" because the Plaintiffs had failed to allege that the packaging had remained consistent over the period at issue and that they had seen the misrepresentations on the packaging every time they purchased the relevant products. *See, e.g.*, No. CV1400428MMMRZX, 2014 WL 12586074, at *10–11 (C.D. Cal. Oct. 20, 2014). Such allegations are also missing here. Accordingly, the Court concludes that Plaintiffs' claims, except for their claim for breach of express warranty, fail to satisfy Rule 9(b)'s heightened pleading standard and **GRANTS IN PART** Defendant's Motion as to Plaintiffs' second through ninth causes of action.

/ / /

/ / /

---

[6] The beginning of the purported class period is not provided in the Complaint, (*see generally* Compl.; *see also* Reply at 3), although Plaintiffs contended at oral argument that it should be readily apparent based on the limitations periods for their claims.

### 2. Rule 12(b)(6)

Having determined that Plaintiffs' fraud-based claims are subject to dismissal under Rule 9(b), the Court need not reach Defendant's arguments for dismissal of Plaintiffs' consumer protection claims under Rule 12(b)(6). (*See* Mot. at 9–13.) In any event, Defendant's argument that those claims should be dismissed because no reasonable consumer would be misled by Defendant's "No Preservatives" label depends heavily on Exhibits C through E to its Request for Judicial Notice, (*see id.* at 10 & nn. 4–5), which the Court denied. *See supra* pages 5–7. The Court is, therefore, disinclined to dismiss Plaintiffs' consumer protection claims at this stage under the reasonable consumer test.

Nonetheless, Plaintiffs' first cause of action for breach of express warranty under N.Y. Consolidated Laws Service ("CLS") Uniform Commercial Code ("UCC") §§ 2-313 and 2-607 and California Commercial Code § 2313 is not subject to dismissal under Rule 9(b). *See supra* pages 16–18. The Court therefore considers Defendant's alternate argument that the fate of Plaintiffs' express warranty claim depends on the fate of their consumer protection claims, (*see* Mot. at 20–21), an assumption that Plaintiffs do not contest. (*See* Opp'n at 22.) Having concluded that Plaintiffs' express warranty claims did not sound in fraud and were not subject to Rule 9(b), however, it does not necessarily follow that Plaintiffs' express warranty claim fails under Rule 12(b)(6) simply because Plaintiffs failed to plead their fraud-based claims with the requisite specificity.

"An express warranty is created by 'any affirmation of fact or promise relating to the subject matter of a contract for the sale of goods, which is made part of the basis of the parties' bargain.'" *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *3 (N.D. Cal. June 5, 2018) (quoting *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (citing Cal. Com. Code § 2313(1)(a))). "Whether a seller's statement is an 'affirmation of fact or promise' that may give rise to an express warranty (as opposed to 'merely the seller's opinion or commendation of the goods') depends on factors including '(1) a lack of specificity in the statement made, (2) a statement that is made in an equivocal manner, or (3) a statement which reveals that the goods are

experimental in nature." *Id.* (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 19–21 (1985)).

Here, Plaintiffs allege that "Defendant made express warranties to Plaintiffs and members of the Class that the Products contained 'no preservatives[,]'" (Compl. ¶ 74), "on every Product label[,]" (*id.* ¶ 75), and that "Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made." (*Id.* ¶ 77.) Plaintiffs' allegations do not reveal "a lack of specificity," "equivoca[tion]," or that the Products were "experimental in nature." The Court therefore concludes that Plaintiffs sufficiently plead a plausible cause of action for breach of express warranty and **DENIES IN PART** Defendant's Motion to the extent it seeks dismissal of Plaintiffs' first cause of action.

## III. Nationwide Class Allegations

Finally, Defendant requests that the Court dismiss or strike Plaintiffs' nationwide class allegations. (*See* Mot. at 21–23.) Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant makes no arguments that Plaintiffs' nationwide class allegations meet this standard. *See, e.g.*, *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 997 (S.D. Cal. 2022) ("This contention fares no better than Defendant's other requests to strike and, once again, provides no argument to support the Rule 12(f) standard that the claims are 'redundant, immaterial, impertinent, or scandalous.'"). Accordingly, the Court **DENIES IN PART** Defendant's Motion to the extent it seeks to strike Plaintiffs' nationwide class allegations under Rule 12(f).

To the extent Defendant seeks dismissal of Plaintiffs' nationwide class allegations under Rule 12(b)(6), "[s]ince *Mazza[ v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)], district courts are divided on whether dismissal of a nationwide class is appropriate at the motion to dismiss stage." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1013 (S.D. Cal. 2021) (collecting cases). This Court agrees with the line of cases concluding that this issue is more appropriately decided at the class certification stage and,

accordingly, **DENIES IN PART** Defendant's Motion to the extent it seeks dismissal of Plaintiffs' nationwide class allegations.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Request for Judicial Notice (ECF No. 7-1), **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 7), and **DISMISSES WITHOUT PREJUDICE** the second through ninth causes of action in Plaintiffs' Complaint for failing to satisfy Rule 9(b)'s heightened pleading standard. The Court **DENIES** Defendant's Motion to Dismiss in all other respects. In light of Plaintiffs' repeated representation during oral argument that they were prepared to "flush out" their allegations, Plaintiffs **MAY FILE** an amended complaint curing the above-identified deficiencies within <u>twenty-one (21) days</u> of the electronic docketing of this Order. *Should Plaintiffs elect not to file a timely amended complaint, this action will proceed as to their sole surviving cause of action for breach of express warranty.*

**IT IS SO ORDERED.**

Dated:  August 13, 2024

_____
Honorable Todd W. Robinson
United States District Judge